537 P.2d 927

Clifford E. JOHNSON and Daryl Noreen Johnson, his wife, Appellants and Cross-Appellees,

v.

William T. ELLIOTT and Pauline E. Elliott, his wife, Appellees and Cross-Appellants.

No. 11716.

Supreme Court of Arizona, In Division.

July 2, 1975.

Burch, Cracchiolo, Levie, Guyer & Weyl by Michael E. Bradford, Phoenix, for appellants and cross-appellees.

Harrison, Myers & Singer by Robert D. Myers and Noel K. Dessaint, Cahill, Hanson & Phillips by H. Eldon Hanson, Phoenix, for appellees and cross-appellants.

LOCKWOOD, Justice:

This case arose as the result of a July 23, 1970, automobile collision between appellants, Clifford and Daryl Johnson, and appellees, William and Pauline Elliott. At the trial each driver claimed to have been favored by a green light when entering the accident intersection of Broadway and Alma School Road in Mesa. The Johnsons, as plaintiffs, and the Elliotts, as counterclaimants, sought to recover for personal injuries and property damage allegedly sustained as the proximate result of the other party's negligent operation of a motor vehicle. The jury rejected the claims made by both sides.

The Elliotts then filed a motion for a new trial alleging the trial court made several errors which resulted in "manifest injustice to the parties." The Elliotts' motion was granted and this appeal by the Johnsons from that order followed. We have repeatedly held "that the grant or denial of such motion is addressed to the sound discretion of the trial court and, barring a manifest abuse of that discretion, the lower court's decision will be upheld on appeal." Rodriguez v. Williams, 107 Ariz. 458, 489 P.2d 268 (1971); General Petroleum Corp. v. Barker, 77 Ariz. 235, 269 P.2d 729 (1954).

The first ground advanced by the trial court in support of its order for a new trial was its error in admitting testimony concerning "the confabulation claim * * * with regard to Mrs. Elliott" because there was insufficient foundation for expert testimony on that phenomenon. Confabulation is a "symptom of certain forms of mental disorder consisting in making ready answers and reciting experiences without regard to truth." Dorland's Medical Dictionary (24th ed. 1965). At the trial the following exchange took place:

"BY MR. BRADFORD:

"Q. Are you familiar with the psychiatric term, confabulation?

"A. To some extent.

"Q. Do you know what it means?

"A. Well it's used as the term synonymous with exaggeration.

"Q. Doesn't it mean the natural tendency of somebody to fill in areas where their memory doesn't touch?

"A. Yes, it could, yes.

"MR. HANSON: Your Honor—

"MR. DOUGLAS: Thank you, Doctor.

"MR. HANSON: Since I wasn't permitted to go into it, I object to him going into it.

"MR. BRADFORD: Thank you, Doctor."

The parties are in disagreement over whether the trial court ever ruled on the belated objection to the confabulation testimony. Appellees' reliance, however, on the trial court's reference in the Order to Correct the Record to "the ruling made with respect to his testimony" to establish that such a ruling was made is misplaced. The Order clearly appears to be referring to the sustaining of the objection to a prior question by the appellees' counsel concerning amnesia. It is also clear that the objection posed by appellees' counsel to the confabulation testimony is not a legally sufficient objection and cannot be construed as an objection for lack of foundation.

"The ruling complained of was made upon an objection without counsel stating any reason for making such objection. This is equivalent to no objection at all." State v. Aldrich, 75 Ariz. 53, 251 P.2d 653 (1952).

" 'An objection to the admission of evidence must state the reason and if it is not objectionable on the ground stated, it is not error for the court to admit it, even though there might be some other proper reason for its rejection not raised by the objection as made.' * * * Brierly's failure to raise this specific objection constituted a waiver of the objection." State v. Brierly, 109 Ariz. 310, 509 P.2d 203 (1973).

An attorney must make a timely objection:

"Parties may not sit by and allow error which is not fundamental to be committed without protesting and asking the trial court to correct the error at the time, and then later, when the judgment goes against them, ask for a new trial on that ground." Southern Arizona Freight Lines v. Jackson, 48 Ariz. 509, 63 P.2d 193 (1936).

There is no evidence that the admission of the testimony concerning confabulation was fundamental error. Trojanovich v. Marshall, 95 Ariz. 145, 388 P.2d 149 (1963). The trial court improperly used this allegation of error as a ground for its order granting a new trial.

**60**

The second ground advanced by the trial court justifying a new trial was its refusal to allow appellees' counsel to question their medical expert on the ability of Mrs. Elliott to accurately recall the events prior to the impact without the intervention of amnesia. This questioning preceded the testimony referred to in the first allegation of error and related to the issue of confabulation.

"Q. Doctor [Fountain], I apologize for digressing, something I didn't take up before, but did Mrs. Elliott report to you any momentary unconsciousness at the time of the injury?

"A. Yes, sir. In her history she indicated that she was knocked unconscious when she was thrown to the floor.

"Q. Do you have any medical opinion as to the effect this might have upon her memory of the events that surround the time that she was knocked unconscious?

"A. It varies. Some patients have an area of amnesia which goes back before the period of unconsciousness, and other patients after the unconscious period have no memory, at least until they wake up again.

"Q. That's because in that period when they were unconscious, that's a period when the mind was forming the memory which stays with the later; is that correct?

"A. Yes, sir. Some patients actually will get amnesia going back even a little before the accident.

"MR. BRADFORD: Thank you, Doctor. No further questions.

"Q. BY MR. HANSON: Your Honor, I have one.

"Doctor, if Mrs. Elliott testified under oath that she recalled the events prior to the impact, in your opinion would she have undoubtedly recalled without the intervention of amnesia?

"MR. BRADFORD: I object to that. That's a question for the jury.

"THE COURT: Yes. Sustained.

Counsel was attempting to elicit Dr. Fountain's medical opinion on the effect of the collision on Mrs. Elliott's memory, a proper subject for expert testimony. Brown v. Connolly, 62 Cal.2d 391, 42 Cal.Rptr. 324, 398 P.2d 596 (1965); Stafford v. Goode, 193 Kan. 120, 392 P.2d 140 (1964). Mrs. Elliott had previously testified that she "came to on the floor of [the] * * * car" and could not recall being taken from her car to the hospital. Mr. Elliott testified that his wife was "incoherent" just after the accident. Hospital records indicate that Mrs. Elliott was confused as to the events surrounding the accident upon her arrival by ambulance. The court did not abuse its discretion in ordering a new trial because of its error in not allowing Dr. Fountain to answer the disputed question.

The third ground advanced by the trial court for ordering a new trial was its conclusion "that it was probably improper on oral argument to argue the officer's testimony that he was unable to determine who had run the red light." Under direct examination by counsel for the defendants-counterclaimants a Mesa police officer, Jose Garcia, testified as follows:

"Q. Do you have any independent recollection of any of the interviews or any of the statements that were made at the scene of the accident?

"A. No, sir.

"Q. Do you have any notes or any memory or any other means by which you could ascertain that?

"A. Well, the only thing that I remember about the accident was that there were several witnesses, and one of them said that—someone there said that Johnson ran the red light, and someone said that Elliott ran the red light. So, I couldn't, you know, I couldn't say that either one ran the red light; so I didn't issue any citation."

In his closing argument counsel for the plaintiffs-counterdefendants stated:

"That's the liability issue in a nutshell that's going to be presented to you. The

question is going to be: can you crack that problem that lost Mr. Garcia out there, a trained police officer on the scene or can you not? There are going to be three forms of verdict given to you. One in essence says: We find for Mr. Johnson against the Elliotts. One says: We find for the Elliotts against Mr. Johnson and one says in effect: We find against both of them. We don't know.

\* \* \* \* \* \*

"\* \* \* There are three forms of verdict, one for Mr. Johnson against the Elliotts, one of the Elliotts against Mr. Johnson and one that says in effect: We can't decide. We are deciding against both of them since either party has the burden of proof going forward and proving their case. If you don't know what happened, neither party has proved this burden. I think you can crack the nut, crack the quandry that was expressed by Officer Garcia when he said he didn't know what happened. I don't know who had the green and who had the red light, but for goodness sake, don't guess about it."

■ The appellees argue that "[t]his closing argument in effect told the jury it could abdicate its sworn duty and sworn role as arbiter of the facts by bringing in a verdict based on the lack of a factual determination." While we agree that counsel's comments on the law were not accurate, it is also clear no objection to the statements were made until the motion for a new trial. As we noted above, a party may not wait until after an adverse verdict to object to alleged errors. Southern Arizona Freight Lines v. Jackson, supra. In addition, the court may not order a new trial on its own initiative except for a "reason for which it might have granted a new trial on motion of a party." Rule 59(g), Arizona Rules of Civil Procedure, 16 A.R.S.

■ The appellees assert their failure to object was not fatal because the utterances constituted fundamental error. Fun-

damental error has been defined as error which goes to the foundation of the case, or which takes from a party a right essential to his case. State v. Spencer, 101 Ariz. 529, 421 P.2d 886 (1966). The doctrine of fundamental error is applied sparingly in civil cases. Baker v. Atchison, Topeka & Santa Fe Railway Co., 11 Ariz.App. 387, 464 P.2d 974 (1970). There is no evidence that the misstatement by appellants' counsel resulted in even slight prejudice to the appellee. Any confusion was eliminated when the court informed the jurors that it is the duty of the court "to instruct you in the law that may apply to this case" and that counsels' "arguments are not evidence." We have concluded that the trial court improperly used the misstatements of plaintiffs' counsel as a reason for ordering a new trial.

## CROSS-APPEAL

■ In response to the defendants-appellees' Motion to Clarify the Order Granting a New Trial the court stated that by its previous order granting a new trial "the Court intended to grant a new trial on all issues." The defendants then cross-appealed contending that the trial court erred in granting the plaintiffs a new trial. The defendants-cross-appellants argued that the plaintiffs had failed to file a written motion requesting a new trial pursuant to Rule 59(c) of the Arizona Rules of Civil Procedure and that the trial judge failed to comply with Rule 59(g) and 59(m) dealing with the court's power to order a new trial on its own initiative. The plaintiffs-cross-appellees subsequently conceded the validity of the defendants-cross-appellants' contentions and thus the issues raised need not be discussed.

■ An appellate court will not disturb an order granting a new trial if it is justified on any one of the grounds stated in the order. Cano v. Neill, 12 Ariz.App. 562, 473 P.2d 487 (1970). The trial court did not abuse its discretion in granting the defendants a new trial on their counterclaim on the ground that it improperly

limited appellees' questioning of their expert concerning the effect of the collision on Mrs. Elliott's memory.

The order granting the defendants-counterclaimants a new trial is affirmed. The order granting a new trial on the plaintiffs' claim is hereby vacated.

HAYS and HOLOHAN, JJ., concur.